I would like to address three items, plus whatever the court has to inquire about. First, judicial integrity. Second, the English language and contract interpretation. And third, the weight of the evidence. Did you mean judicial estoppel? Judicial estoppel is what comes with judicial integrity. Oh, you said, all right. The reason I say that is my perspective of the concept of judicial estoppel is to protect the integrity of the legal system. It obviously is to avoid someone taking an unfair benefit. But the purposes that are set forth in the cases also say it's for the orderly administration of justice, it's for the dignity of the judicial proceedings, and it's to prevent someone from playing fast and loose with the rules of the court. In this case, there are a lot of factors that go into judicial estoppel. It's called the doctrine of preclusion of inconsistent positions. The factors that are enunciated are some of the key factors, and the key is there are factors. There is no formula, but there are factors that the courts look to. One of the first factors is an inconsistent position. The district court found that there was an inconsistent position in its decision, in its findings and facts. It said there was an inconsistent position between the position taken by Monsanto or Solucia, both names that are related companies at that point in time. In the IPUC hearing in 1995, the fact that their contract only protected a source of power until December 31, 2001 was inconsistent with the position they were asserting in this matter, that they had, in fact, a source of power and a guarantee of power until January 1st of 2003. So the court found an inconsistent position, which we concur in. In fact, we don't disagree with any of the findings and facts of the court, other than the two conclusions of law that there was an ambiguity. The second factor most of the courts look at is whether the court was persuaded to accept the position asserted by the party. Now, this is where the district court in Idaho, we believe, made an error. The district court in Idaho found in its decision that the underlying IPUC did not rule in favor of Monsanto. That's not the standard. The standard isn't whether you win in the first position. It's whether you succeed in getting the court to accept your position. This is very well set forth in the case of ---- Sotomayor, was that clause an essential element in dispute before the PUC in Idaho? Was the clause section 2 of the paragraph? Right. It was absolutely essential. It was when the contract terminated. And that was in dispute before the PUC in Idaho? It was not in dispute. It was a position. What was the concern of the Idaho PUC with respect to that clause? The concern of the IUPC with respect to that clause was Monsanto was taking the position, Solucia was taking the position, that the Idaho Public Utilities Commission, first, should not allow the merger between Pacific Core and Scottish Power because it would jeopardize the pricing and the power supply for Monsanto. Or second, if they were to accept it, they should put a five-year moratorium on any price changes for power so that they would be protected after the merger of not having a dispute. And it didn't succeed on any of either of those arguments? Interestingly, the Idaho Public Utilities Commission found that it was inappropriate No, no, no. It didn't succeed. It did succeed on the argument that the contract terminated December 31, 2001. No, no, no. They had two objectives. One, to prevent the merger, right? Correct. That didn't happen, did it? Correct. Second, they wanted a five-year moratorium. That didn't happen either. Correct. So what did they gain from their position? Doesn't the case law require that they gain some benefit from that position in the prior proceeding? I don't believe so. That's what the Supreme Court says. In New Hampshire? It prevents the party from prevailing in one phase and then relying on a contradictory argument in another phase. So they have to prevail, and they didn't prevail on those arguments. The Idaho Supreme Court in New Hampshire at 532 U.S. 742, a 2001 decision, said that the court regularly inquires whether the party has succeeded in persuading that either the first or the second court was misled, persuading a court to accept the party's earlier position so the judicial acceptance of the inconsistent position in a later proceeding would create a perception that either the first or second court were misled. That's what the U.S. Supreme Court said. Now, there is somebody being misled here. If you look at the letter of April 1999 from Jim Smith to the President of Scottish Power, a letter the Pacific Court never saw, it says that they have two more years on their contract through December of 2002, a position similar to what they're asserting now. Five months later, they file a briefing from the Idaho Public Utilities Commission saying that they only have a power supply until December 31, 2001. That's what they say on page 3. On page 2 of their brief, they set forth the paragraph that's in dispute. They interpret it. They advise the Idaho Public Utilities Commission what it says on page 3, and that's that they only have power through December 31, 2001. I assert that as the U.S. Supreme Court said, that is a position that has been accepted in the first position that would create a perception that either the first or second court was being misled. One of these groups was being misled, either the IPUC or the IPUC when they say that the contract terminates on December 31, 2001, or the Idaho District Court when they argue that the contract terminates in January of 2003. The third factor that has to be is that there has to be an unjust benefit. Ken Wolford commented on what the benefit to the Monsanto would be if this were a seven-year contract. Interestingly, in his memo, which is at ER 180, it's Exhibit 2016, in his memo analyzing the proposed contract, he says that this is a six-year contract. He says, I will also analyze a seven-year contract that has not been offered. Attached to that memo is the analysis. According to him, getting a seventh year on that was worth $9.5 to $11.6 million to Monsanto. There is the unjust benefit from having taken inconsistent positions between two tribunals, and that's where I address the issue as being judicial integrity, but the dignity of the process in taking inconsistent positions between two different groups that leads one to believe that they are misleading one or the other of those courts and that they should not benefit from that. That draws directly into the interpretation of the English language. When you look at it. Well, since there was obviously the issue of the ambiguity of this particular clause, and looking at it, you know, I mean, you can both make arguments on that, and the Court found it to be ambiguous. Did the Court – while the Court found inconsistent statements, what did the Court say about whether they were misleading or whether it was just based on the ambiguity? The district court said, as the question from Judge Toshima, they said, well, the underlying IPUC did not rule in favor of Monsanto. Therefore, it's irrelevant. I don't believe that's what the U.S. Supreme Court said in New Hampshire, and it certainly is not what Edwards said. Edwards enforced the Sixth Circuit ruling, not binding, but it came out in 1982. And footnote 5 specifically says, A party need not finally prevail on the merits in the first proceeding. Rather, judicial acceptance means only that the first court has adopted the position urged by the party, either as a preliminary matter or as a part of a final disposition. And that's exactly what we have here. That's the same, actually, in Hamilton. In Hamilton, it was a bankruptcy matter, and the person didn't list this action on the bankruptcy schedules. The bankruptcy was denied. It was discharged. Hamilton benefited not at all from the bankruptcy. But then later, after the bankruptcy was discharged, a year later brought a suit against State Farm for collection on a policy action. They said you can't do that. That was an asset of the estate. It didn't disclose it. And even though you didn't benefit from the underlining matter, you are stopped from raising it. That's a 2001 Ninth Circuit court decision. So it's the fact that they accepted the position, which the IPUC says, for specifically in their findings of fact and conclusions, that they did accept Monsanto's position. And then they take a contrary position now. But in regards to the specific issue of ambiguity, I totally disagree that it's ambiguous. I totally disagree that this clause is ambiguous because, not because it can't be argued two ways. Obviously, we are. But if there's only one interpretation that makes reasonable sense, then it's not ambiguous according to Idaho law. In this case, if you read the clause to say that the portion that says it terminates on December 31st, 2001 really means it terminates on January 1st, 2003, that makes no sense. If they wanted it to terminate on January 1st, 2003, that's what they would have said. It specifically says it runs through December 31st, 2001. This is thereafter it will renew. A lot of hay has been made about the word thereafter. What else could they say about the renewal? It can't renew before it terminates. It has to renew after it terminates. It could be after or thereafter. But it has to be after. And it says unless one year's written notice of termination is given. It doesn't say unless thereafter one year's written notice of termination is given. It doesn't say unless one year's written termination of notice is given after the termination date of the first one. So if we interpret it the way the district court did, it eliminates the meaning of the termination provision. It eliminates the original six years of the contract. And it makes a seven-year contract. And if you want to interpret it in that technical stance, I hope you can follow me because my wife couldn't. If you have to give notice of termination after December 31st, 2001, you can't give it until January 1, 2002. Okay? You have to give one year's notice. You can't give one year's notice before December 34th, 2002, which would be the next date it would renew. So you can't give one year's notice because you're going to be a day late of 365 days' notice. So technically they get two more years if you want to interpret it the way Monsanto has argued this. It doesn't make sense. It doesn't make sense when you look at the facts either. And that's why I say let's look at the facts. Every single fact put before the court, every single fact in the court's findings of fact supports a six-year contract. And this is except for the letter, the solution letter that I referred to, the solution letter that five months later they contradicted at the IPUC hearing. In the application by Pacific Court to the IPUC to accept this, we assert that it terminates on December 31, 2001. In the electrical service schedule, number 400, which set out what the contract provided for, we say it terminates December 31, 2001. When we file our application with the IPUC, we have to file a technical support paper, and it has to calculate the effect of these rates on the provision of electrical services for the whole area that we service and how it benefits other people. And we have to calculate how that's going to offset our operating expenses, and every calculation in that technical paper is on a six-year basis, nothing on seven years. In Bill Griffith's letter to the pricing manager for Pacific Court to the Montana Public Service Commission, we assert that it's through 12-31-01. In the IPUC order that came out, they assert that it's through 12-31-01. In Monsanto's brief, as I discussed, they say they only have a stable supply of power through 12-31-01. The president of Monsanto, giving a speech, which is at ER 298.2, giving a speech to the Rocky Mountain Electrical League, says they have a 74-month agreement. He goes on the next page and says they've tied up power for six years and two months. Monsanto's expert, while he may not be binding upon them, he's consistent with everything else. He indicates that the term is through December 31, 2001, at ER 320. He says the first time the rate could be affected is after the close of December 2001, ER 345. Pacific Court's annual statement for 1995, the term is a six-year term, ER 288. There simply is no evidence of anything except a six-year term. There is simply an attempt to argue the English language, to have it say something that it just doesn't say. And I would reserve the rest of my time unless there are additional questions. MR. ARNOLD. Good morning, Your Honors. My name is Mark Arnold. I'm from St. Louis, Missouri. I am told I have an accent, although I would vigorously deny that. In any event, I hope you'll be able to understand what I have to say this morning. May it please the Court, let's start with judicial distol. Pacific Corp. has waived this argument because they never presented it at trial. All Judge Winwood did was to deny their motion for summary judgment on that issue. If Pacific Corp. had wanted to call Monsanto's lawyer who wrote that brief and try and get a Perry Mason-style confession out of him on the witness stand, Pacific Corp. was free to do that. But they didn't do that. They didn't mention one word about judicial distol at trial. Now, they have cited a case to you in a footnote that says you can review, despite the general rule, that you can't review a denial of summary judgment. Maybe you can if it's a pure question of law. Now, Mr. Sinclair, not 15 minutes ago, Your Honors, told you that the application of judicial estoppel doesn't depend upon any particular formula. And he is absolutely right about that. It depends upon the sound discretion of the district court. And you review that ruling for abuse of discretion. Now, I have never heard of a court that reviewed a pure issue of law for abuse of discretion. They have waived this argument. Now, on the merits, really, page 2 of the brief got it right. Page 3 of the brief got it wrong. And that mistake is somehow supposed to translate into a fraud or misrepresentation on the Court. Come on. You asked Judge Paez just how central the termination date of this contract was to IPOC. And the answer is the order approving the merger said, one, it's completely irrelevant. Two, it's beyond our jurisdiction even to make that determination. So we didn't gain anything out of this alleged misrepresentation or alleged fraud on IPOC. We got nothing out of it. And that defeats judicial estoppel on the merits. Now, I have not seen one case out of this court in which you reverse a district court for abusing its discretion in failing to apply the doctrine of judicial estoppel. I've seen cases where the other way, applying it was an abuse of discretion. But I haven't seen a single case, and Pacific Corp hasn't cited any, that come out that way. So the judicial estoppel argument is really just plain wrong. Now, ambiguity. You can read the contract my way. You can read the contract Mr. Sinclair's way. And that is the very definition of an ambiguous contract. There are two key words here. One is thereafter. And that means after that. The second key word is until. And that means up to the time that. Now, Mr. Sinclair said the contract used the word unless. I'm sure it was an innocent mistake, but it's wrong. It uses the word until. And that's critical, and we'll see why. The first part of 2.1 says the contract continues in full force through 1231.01. And if it stopped there, we wouldn't be here this morning. But it doesn't stop there. It goes on. It says thereafter, i.e., after that, i.e., after 1231.01, the contract shall, note the mandatory word, shall be renewed annually until, up to the time that either party gives the requisite one year's notice. So after 1231, the contract is renewed until, until the party gives the requisite one year notice. Or put differently, you can't give an effective one year notice until after 1231.01 date. Now, that is at least as plausible a reading of the contract as specific courts. Now, if you agree with me that this contract is ambiguous, then I think the appeal is basically over. Because the standard of review, the meaning of an ambiguous contract is a question of fact for the district court. You review that for clear error. And clear error means, you know, that it's so wrong that it strikes you with the force of a five-week-old, unfrigerated, dead fish. That's a tough standard. The evidence must be taken in the light most favorable to the judgment. The reasonable inferences must be taken in the light most favorable to the judgment. And the one thing you cannot do as an appellate court is what Pacific Court was asking you to do this morning. And that is redraw inferences and reweigh the evidence. That is not the function of an appellate court. Judge Boyle relied upon four pieces of evidence and the reasonable inferences therefrom to come to the conclusion that this contract meant what Monsanto meant. Number one, the objective of the contract. The preliminary clause says the purpose of this contract is to provide electrical service in a manner, quote, most advantageous to Monsanto. Now, this evergreen clause was Monsanto's idea. We wanted it. Electric power is our single biggest source of expense at this plant, and one of our leading competitors had an evergreen clause in its power supply contract, and our business people perceived that to give the competitor an advantage. So we wanted that clause. The only way to fulfill the contractual objective of making this contract most advantageous to Monsanto is to agree with Monsanto on the clause that issued the evergreen clause that we wanted. Number two, Judge Boyle relied upon the words I've already discussed, the meaning of thereafter, the meaning of until. And he concluded correctly in my view that the only way to give meaning to those words, true meaning to those words, is to construe the contract as Monsanto did, a six-year base, one-year automatic renewal, and then it can be terminated. Number three, the difference between the renewal language in the 91 contract and in the 95 contract that is at issue today. The 91 contract said if Monsanto wants to renew, it can come ask, and Pacific Corp has sole discretion to say yes or say no. Now, the position they're taking today is that they have the sole discretion to say yes or say no, and they could give that notice of termination one day after they signed the 95 contract if they wanted to. That gives sole discretion to Pacific Corp. Well, if that's what the parties intended, why didn't they stick with the unambiguous language in the 91 agreement instead of putting in what became paragraph 2.1? The only logical conclusion is the one that Judge Boyle drew. They intended to change the terms. And finally, finally, you have the submission that Pacific Corp made to IPOC. Now, that is, I think, really critical evidence in two respects. Number one, it's a contemporaneous expression of what the parties thought this contract meant. And number two, and I think at least of equal importance, what a regulated utility tells the regulator can't darn well better be accurate. So I think this is accurate, and there are two parts of that submission on which Judge Boyle relied. One is the application. And the application described this in two different sentences. The first sentence talks about the base term through 1231.01. The second sentence says it will continue year to year thereafter, i.e., after 1231.01, subject to the requisite one-year notice. The second part is the technical assistance package. And the technical assistance package says after 1231.01, the contract is renewed annually until up to the time that the requisite notice is given, which is precisely what Monsanto says this contract means. Nothing in those submissions says that it will be anything other than a base term of six plus one automatic plus whatever the parties agree to thereafter. There is nothing in those submissions that says Pacific Corp. can terminate this contract, can terminate the six years, after the six years, any old time it wants. Now, that's the evidence on which this judgment was based. I grant you there is some contrary evidence, and you heard some of it this morning. The description, for example, it was a six-year or 74-month fee. Judge Boyle explicitly addressed that. And he said, I will not draw the inference that Pacific Corp. wants me to draw out of this because of the past relationship of the parties. They'd never gotten to the point where renewal clauses, man, they'd always renegotiated long before the contract ran out. So they were being careless in that. Our letter in April of 1999 certainly said it right. The brief five months later to IPUC on page two was right, page three was wrong. And Judge Boyle said, well, I don't care what happened in 99. Much more persuasive to me is what happened in 1995 when everything was fresh in the party's mind. And that is certainly a permissible inference for the judge to have drawn. Basically, this appeal involves nothing more than Pacific Corp. saying, please, judge, draw a different inference than the trial judge did. Having drawn a different inference, please reweigh the evidence and come out for me. That is not a proper function of any appellate court. If the court has any questions, I'll be glad to answer them. If you're done with me, I thank you very much for the opportunity to appear. It's been a real pleasure. Mr. Arnold. Yes, Your Honor. I have a question that doesn't really impact your argument. I'm just curious about something. Since this is really an electric rate contract between a regulated utility and one of its retail customers, and the agreement is specifically subject to the approval of the Idaho PUC, why doesn't that body have the jurisdiction to interpret this contract, especially since it has a tremendous effect on the rate to be paid by this customer? That gets to the technicalities of Idaho Public Utility Commission law, on which I will absolutely confess I am no expert at all. All I can tell you, Judge Nishima, is that in the order approving the merger, they said this is beyond our jurisdiction. Only a court can construe a contract. Now, whether that makes sense or not, that's what I thought the law was. Okay. Thank you. Indeed. Judge Files? Judge Callahan? No. Okay. I thank you very much. Thank you. I appreciate your argument. Thank you. I might address a couple of the points raised. In regards to the waiver aspect, this has been briefed. Obviously, we didn't put it to sleep. But Alvarez is a pretty clear Night Circuit 2003 case on this. It indicates that there is an exception to the general rule where, as here, judgment was entered after a bench trial, and the issue on appeal is one purely of law. We're not challenging any of the findings of facts. We're just challenging the application of those facts. But this is fact-dependent determination. But we are accepting the findings of facts as he found them. Which findings of facts? Findings of facts that are set forth. At the trial? Yes. Now, the only one we have proposed that they should have found that he didn't, and they've argued about, is the 30-year amortization and the fact that everybody amortized it over a six-year basis. And we think that, again, supports your position. So what's your argument, then, if you're saying you're accepting all the findings that Judge Ball made? Are you saying that some other conclusion is compelled by those findings? Is that what you're saying? Absolutely. No question about it. Is it a contrary conclusion? As I read through the findings of facts, the Court found the findings of facts that we had submitted, and it came to the opposite conclusion. He does specifically address judicial estoppel because he's talking about whether or not inconsistent positions should be held against Monsanto. And he makes, we believe, the misinterpretation of New Hampshire and rules that since Monsanto didn't prevail. The trial judge has, you know, has some discretion about whether or not to apply judicial estoppel. Absolutely. We think he should have, but he does have discretion. And it's an abusive discretion standard. That's a high standard, and I appreciate that. But we basically believe it should have been applied and that there is no real basis not to apply it, and that the reason he didn't apply it was a misapplication of his understanding of the law as set forth in his conclusions of law, that it's not relevant because Monsanto did not prevail in the underlining action. If it, if they did prevail, then we should send this back and ask the Court, okay, if it's not, if they don't have to prevail, if under Hamilton and under Edwards and under New Hampshire, if they don't have to prevail, they just have to persuade the Court to take that position, then at least, at the minimum, this should be sent back to Judge Boyle and say, okay, you misapplied that aspect of the law. How would you rule if all they had to do was accept the position as the IPUC did? In that case, they get a different ruling, and we believe that ruling is so clear because there's only one ruling you can make. I love the ruling that there's a paragraph right at the front, an introductory paragraph, a paragraph that says you're supposed, that this contract is supposed to be beneficial to Monsanto. That paragraph says it's supposed to be beneficial and that we're supposed to in the most beneficial way. It says nothing about interpreting contracts. But that argument I like, that you're supposed to interpret contracts consistent and to read a termination clause to say that the termination date, 12-31-01, is meaningless. Makes no sense. Can you get just your co-counsel, your counsel for Monsanto just got up and gave a, sounded like a very plausible interpretation of the clause. And that's exactly what Judge Windmill says when he said, I guess there must be an ambiguity because you have both taken a different position on this. And I simply assert that we have to go back to the common usage of the English language. The word thereafter has nothing to do with when notice is given. It says thereafter it will renew. And as I said before, it can't renew until thereafter. You can't renew until you terminate. And it says until the notice is given. It doesn't provide us. We could give, as he argues, we could give notice the day after the contract is signed that we're going to terminate this. It wouldn't terminate in one year. It would terminate on December 31, 2001. But we would have given four years less one day, five years less one day notice. And that's all we have to do is give at least one year's notice, which we did on December 11, 2000. We gave one year's notice. But you eviscerate the English language by saying that a termination date, 12-31-01, not only a termination date that's in the agreement, but it's in every single document thereafter. But that has no meaning. And you allow the president of Monsanto to get up right after this is entered and to give a speech in front of the Rocky Mountain Electrical League and to tell them, we just signed a seven-to-four-month contract, that we have secured power for six years and two months, and to say that the president of Monsanto doesn't bind the company either, that his representations are not relevant. Everything in this case says it terminates on December 31, 2001. I have five seconds left, so I'll yield. Maybe you could just answer, Judge Teshimis, if you know the answer to that, just out of curiosity. I cannot totally answer it. The issue did come up in the underlying proceedings, and the IPUC did indicate that, as you can tell, there was no damages determined in this case. And the IPUC indicated they would determine the damages, they would determine the rate differential and how much additional monies were owed or weren't owed, but that we had to make a determination in regards to the contract interpretation. It doesn't involve rates. I see. This is contract interpretation. I see. That does shed light on it. Thank you very much. Thank you very much. We appreciate the arguments. The matter will be submitted. Thank you.
judges: Tashima, Paez, Callahan